**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| SAYED QIAMUDDIN SADAT, | ) | |
| *Petitioner*, | ) | |
| v. | ) | Case No. 1:26-cv-773 (PTG/IDD) |
| KRISTI NOEM, *et al.*, | ) | |
| *Respondents*. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Petitioner Sayed Qiamuddin Sadat's Petition for a Writ of Habeas Corpus (the "Petition"). Dkt. 1. Petitioner is a national and citizen of Afghanistan, who was lawfully paroled into the United States under 8 U.S.C. § 1182(d)(5) on October 31, 2023. *Id.* According to the Petition, on or about December 3, 2025, agents from Immigration and Customs Enforcement ("ICE") detained Petitioner, without explanation, when he appeared for a routine ICE check-in appointment. *Id.* ¶ 3. Petitioner has since been detained at the Caroline Detention Facility in Virginia, which is within this Court's jurisdiction. *Id.* Petitioner filed suit against Kristi Noem, then-Secretary of the U.S. Department of Homeland Security—who has now been replaced by Markwayne Mullin—and others, alleging that his continued detention violates his constitutional rights. *Id.* ¶¶ 59-64. Respondents contend that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2). Dkt. 3 at 4. Upon consideration of the Petition (Dkt. 1), Respondents' Opposition (Dkt. 3), and Petitioner's Reply (Dkt. 5), the Court concludes that ICE did not properly revoke Petitioner's parole and there is no other lawful basis for detaining Petitioner. Therefore, the Petition is **GRANTED**.

## BACKGROUND

### A. Legal Framework

Persons detained upon arrival into the United States fall into two categories: noncitizens who are covered under 8 U.S.C. § 1225(b)(1) and those covered under 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) includes those "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and certain others designated by the Attorney General. *Id.* Section 1225(b)(2) is a "catchall provision" that includes "most other applicants for admission." *Id.*

Regardless of which portion of § 1225 a noncitizen falls under, the government may release the noncitizen on parole, on a case-by-case basis, "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). Once removed from expedited removal proceedings, noncitizens are "afforded the same procedural rights as other aliens." *Thuraissigiam*, 591 U.S. at 111.

Determining whether to release a noncitizen on parole is within the "reasonable discretion" of officials within the Department of Homeland Security ("DHS"). 8 C.F.R. § 212.5(d). Federal regulations advise officials to consider "all relevant factors" when deciding whether to grant parole, including: "[t]he giving of an undertaking by the applicant, counsel, or a sponsor to ensure appearances or departure . . . [c]ommunity ties such as close relatives with known addresses; and . . . [a]greement to reasonable conditions (such as periodic reporting of whereabouts)." *Id.*

Parole may be revoked when DHS determines that "the purposes of such parole . . . have been served." 8 U.S.C. § 1182(d)(5)(A). The regulations implementing this statute define the two ways that DHS terminates parole: "automatic[ally]" or "on notice." 8 C.F.R. § 212.5(e). The "automatic" provision at § 212.5(e)(2) states that parole is automatically terminated if a parolee

departs the United States or "at the expiration of the time for which parole was authorized," and in which case, "no written notice [of the revocation of parole] shall be required." *Id.* At all other times, parole must be terminated "upon written notice" that "the purpose for which parole was authorized" has been accomplished or that a designated official finds "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.* Under the empowering statute, parole "shall not be regarded as an admission of the alien," and revoking parole "return[s the noncitizen] to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

**B. Factual History**

Petitioner is a national and citizen of Afghanistan, who was lawfully paroled into the United States under 8 U.S.C. § 1182(d)(5) on October 31, 2023. Dkt. 1 ¶ 1. Without forewarning or explanation, Petitioner was detained at a routine ICE check-in on December 3, 2025. Dkt. 1 ¶ 3.

**DISCUSSION**

The central question in this case is whether ICE can terminate a noncitizen's humanitarian parole without individualized findings or an opportunity to be heard. Under the INA, Congress permitted the Secretary of Homeland Security to grant non-citizens discretionary parole, but "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). Congress also defined when discretionary parole may be revoked: "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served" or that a designated official finds "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.* Because an immigration official must make a "case-by-case" determination to grant

humanitarian parole, assessing whether the conditions of permissible termination are present also requires "case-by-case" assessment. *Id.* In other words, § 1182(d)(5)(A) requires DHS to make individualized findings when revoking parole. *See Pineda-Berrios v. Lyons*, No. 1:25-cv-2332 (LMB), 2026 WL 384159, at *6 (E.D. Va. Feb. 11, 2026) ("8 C.F.R. § 212.5(e) requires DHS to engage in a 'case-by-case' determination before parole can lawfully be revoked."); *Seleznev v. Mullin*, No. 3:26-CV-130, 2026 WL 907692, at *6 (E.D. Va. Mar. 31, 2026) ("[R]evoking parole without a determination as to whether its purposes have been served is inappropriate.").

Here, ICE revoked Petitioner's parole without individualized findings or an opportunity to be heard. Rather than contend that Petitioner's parole was revoked, Respondents argue that Petitioner's parole was only granted for a two-year period and terminated on October 28, 2025. Dkt. 3 at 5. However, Respondents have presented no evidence to suggest that the October 28, 2025 date, which is listed on Petitioner's I-94, was based on any individualized findings. DHS "cannot simply tack on a [two]-year limitation to the grant of parole without considering [Petitioner]'s individualized circumstances and whether the purposes of parole would be accomplished within [two] year[s]." *Pineda-Berrios*, 2026 WL 384159, at *6.

For the same reasons Judge Brinkema expressed in *Pineda-Berrios*, the Court finds that Petitioner was due adequate notice and an opportunity to be heard before his parole was revoked. Thus, ICE's current detention of the Petitioner violates his due process rights under the Fifth Amendment.

Accordingly, it is hereby

**ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED**; it is further

**ORDERED** that Petitioner be immediately released from custody, with all his personal property, subject to the conditions of his preexisting parole, except for the provision purporting to terminate parole on a date certain; and it is further

**ORDERED** that Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are **ENJOINED** from rearresting Petitioner unless he has committed a new violation of any federal, state, or local law; fails to comply with the conditions of parole, except for the provision purporting to terminate parole on a date certain; or his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e).

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 28th day of September, 2026.
Alexandria, Virginia

/s/
**Patricia Tolliver Giles**
**United States District Judge**